UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

WILLIAM HENRY HARRISON,

    Plaintiff,

   - against -

LUTHERAN MEDICAL CENTER; Brooklyn,
NY; GARRICK VOLPIN, Doctor, Psychiatrist;
D. BRIZER, Doctor, Psychiatrist; F. DRON,
Doctor, Psychiatrist; Doctor GLOVER, B.O.P.
Doctor; JOAN MELL, Nurse; Ms. FALSETTO,
Nurse; VERONICA GUILLERMO, Nurse; Ms.
FURMAN, Nurse; Ms. LORRAINE M. (Can't
Make Out Last Name); Ms. LAUREN MACHIN,
CWS Asst. VP Behavior and Administrator; 10
UNKNOWN SECURITY GUARDS, Unknown
Security Company; DIRECTOR/
ADMINISTRATOR of Lutheran Medical Center;
CHIEF EXECUTIVE OFFICER of Unknown
Security Company; UNITED STATES OF
AMERICA; FEDERAL BUREAU OF PRISONS;
AITO/ARTO BUTEURN,

    Defendants.

-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**05 CV 2059 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

  Plaintiff, William Henry Harrison,[1] filed this *pro se* action under <u>Bivens v. Six Unknown</u>

<u>Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) ("Bivens"), 42 U.S.C. §§ 1983,

1985 and 1986, the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671-80 ("FTCA") and state

------------------------

  [1]Plaintiff, a federal prisoner at the time the action was filed, was released from custody on
August 6, 2008, but remains on supervised release. He currently resides in Virginia.

law. The federal defendants[2] and the Lutheran defendants[3] move to dismiss the action. The Honorable Carol Bagley Amon referred the parties' motions to me pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendants' motions to dismiss should be granted in part and denied in part: all of plaintiff's claims should be dismissed except for his claims against the Lutheran defendants under 42 U.S.C. § 1983, which should proceed.

## BACKGROUND AND PROCEDURAL HISTORY

### I. Background

Plaintiff's action arises out of the twenty-three (23) days in 1999 (February 10, 1999 to March 4, 1999) when he was hospitalized at the Lutheran Medical Center ("Lutheran") in Brooklyn, New York, to undergo psychological evaluation to determine his competency to stand trial for criminal charges in the United States District Court for the Eastern District of Texas. United States v. Harrison, 99-CR-2 (LED)(E.D.TX). On February 10, 1999, plaintiff was transported by the United States Marshals Service to the Metropolitan Correctional Center ("MCC") in New York City . Complaint at ¶ 27; see 18 U.S.C. § 4241(d). Later that day, he was transferred to Lutheran for observation and psychological evaluation, where he alleges he was "assaulted physically, injured and antispychotic medications were forcibly injected into him

---

[2]The United States of America, Federal Bureau of Prisons and Dr. Glover are collectively referred to herein as the "federal defendants."

[3]Lutheran Medical Center, Director/Administrator of Lutheran Medical Center, Dr. D. Brizer, Dr. F. Dron, Nurse Joan Mell, Nurse Angela Falsetto, Nurse Veronica Guillermo, Nurse Furman, Ms. Lauren Machin, CWS Assistant Vice President Behavior and Administrator, are collectively referred to herein as the "Lutheran defendants."

on two occasions, and secretly and surreptitiously put into his juice on a daily basis, without Harrison's consent and without a court order to involuntarily medicate Harrison." Id. at ¶ 29. Plaintiff alleges details of these incidents in paragraphs thirty to seventy-one of the complaint. He alleges that he was given Haldol, Activan, Risperadone, and Zyprexa, and that he was "assaulted and force medicated" on February 18, 1999 and March 4, 1999. See e.g., id. at ¶ ¶ 30, 32, 51, 59, 61, 66, 69. Plaintiff was transferred from Lutheran on March 4, 1999 and has not returned to this jurisdiction.[4] He avers that he objected to the medication "at every turn," and that the defendants omitted his records of forced medication. Id. at ¶ 68-69. Plaintiff seeks millions of dollars in damages. Id. at 21-23.

---

[4]As noted in the Court's initial order on July 27, 2005, after plaintiff's examination at Lutheran, "Harrison underwent multiple evaluations in an effort to establish his competency to stand trial. He was finally adjudicated competent on April 16, 2002, and was tried on June 3, 2002." U.S. v. Harrison, No. 03 Civ. 40160, 108 Fed.Appx. 987 (5th Cir. Sep 23, 2004), cert.granted, judgment vacated, 545 U.S. 1137 (U.S. June 27, 2005), judgment reinstated, 237 Fed.Appx. 911 (5th Cir. June 21, 2007).

The Court assumes familiarity with the facts set forth in Harrison v. Lappin, No. 04 Civ. 681, 2005 WL 752189, at *1 (D.D.C. March 31, 2005), aff'd 2006 WL 3093804 (D.C.Cir. June 22, 2006). In the time between his examination at Lutheran and his trial, plaintiff was examined in May 1999 at the Federal Medical Center in Butner, North Carolina, determined to be competent to stand trial, and transferred back to Texas where he was examined by another psychologist in September 1999. Based on that report, it was determined that plaintiff was not competent to stand trial. Thereafter, in 2000, plaintiff was evaluated at FMC Butner, and, in May 2001, he was again determined to be incompetent to stand trial. Plaintiff was then transferred to the Federal Medical Center in Rochester, Minnesota and eventually was found competent to stand trial. On January 23, 2003, plaintiff was sentenced to 168 months for conspiring to distribute cocaine and marijuana and was re-sentenced to a term of 132 months on January 31, 2008. Plaintiff was released from custody on August 6, 2008. He is currently serving a five-year term of supervised release in Virginia.

## II. Procedural History in This Court

On April 12, 2005,[5] plaintiff filed the instant action alleging physical and mental abuse, including forced medication. After a series of *sua sponte* orders and motions for reconsideration spanning several years [see documents 3, 12, 14, 17 and 21], the initial issues remain the bases for defendants' instant motions to dismiss: whether the respective statutes of limitations bar plaintiff's Bivens, Section 1983, and state law claims against the remaining defendants[6] and whether plaintiff's claim under the FTCA should be dismissed for lack of jurisdiction or as time-barred.

## III. Plaintiff's Litigation History

This is not the first action plaintiff has filed regarding his treatment at various psychiatric hospitals between 1999 and 2002, nor is it the first time that plaintiff's action has faced dismissal

---

[5]While the complaint was not received in the Court's *Pro Se* Office until April 16, 2005, plaintiff invokes the "prison mailbox rule" and attests that he submitted the complaint to prison officials for mailing on April 12, 2005. Complaint at 24. Thus, for purposes of this motion, plaintiff filed the action on April 12, 2005. Fernandez v. Artuz, 402 F.3d 111, 113 n. 2 (2d Cir. 2005) (The "filing" rule in Houston [v. Lack, 487 U.S. 266, 271 (1988)], has been extended to other cases to determine the date of filing and "the Second Circuit has consistently applied the mailbox rule to papers filed by state prisoners initiating federal actions.").

[6]By Order dated July 27, 2005, the Court dismissed plaintiff's Bivens claims against defendants Federal Bureau of Prisons ("BOP") and any individual federal employees in their official capacities for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A. Upon stipulation by the parties, by Order dated October 17, 2008, the claims against the New York City Health and Hospitals Corporation and its Director were dismissed. All other defendants named in the initial action remain parties. However, a number of defendants have never been served: Dr. Garrick Volpin; 10 unknown security guards; CEO of Unknown Security Guard Co.; Aito/Arto Buteurn, Nurse; and Ms. Lorraine M. (Can't Make Out Last Name). Although these defendants are not addressed by the instant motions, plaintiff's claims against them should be dismissed under Fed. R. Civ. P. 4(m).

without reaching the merits of his claims. Despite years of litigation seeking to challenge the constitutionality of his psychological care while in the custody of the BOP prior to his 2002 trial on criminal charges in the Eastern District of Texas, no court has reached the merits of plaintiff's claims. Plaintiff has brought the same claims herein to two other courts, both of which dismissed his claims. Harrison, 2005 WL 752189, at *3-4 (filed in D.D.C. on April 27, 2004, dismissed on March 31, 2005) (Lutheran defendants dismissed for lack of personal jurisdiction, BOP Director and Administrative Remedy Coordinator defendants dismissed for failure to state a claim, and FTCA claim dismissed for improper venue); Harrison v. Herbel, No. 05 Civ. 550 (E.D.N.C. filed on April 12, 2005, dismissed on July 17, 2007, motions for reconsideration denied on October 10, 2007, November 6, 2007, and March 4, 2008, dismissal affirmed by the United States Court of Appeals for the Fourth Circuit on June 12, 2008, 281 Fed.Appx. 236 (4th Cir. June 12, 2008)) (Plaintiff's Bivens claims were dismissed as time-barred and the FTCA and state law claims were dismissed for lack of subject matter jurisdiction).

Plaintiff has also litigated other federal claims in various federal courts since his Texas conviction in 2002. A review of the Federal Judiciary Public Access to Court Electronic Records ("PACER") Service reflects that, since 2002, in addition to his criminal case in Texas and his several appeals of that conviction, plaintiff has been a party to at least seventeen civil actions before district courts in North Carolina, New Jersey, Pennsylvania, Virginia, Texas and the District of Columbia and to more than sixteen actions before the Courts of Appeals for the Third, Fourth, Fifth and District of Columbia Circuits. See http://pacer.psc.uscourts.gov/ (last visited March 4, 2010).

5

## STANDARD OF REVIEW

### I. Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction

"'The party invoking federal jurisdiction bears the burden of establishing' that jurisdiction exists.'" Sharkey v. Quarantillo, 541 F.3d 75, 82 (2d Cir. 2008). However, "'[i]n reviewing the grant of a motion to dismiss [under Rule 12(b)(1) ] we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" Id. at 83 (quoting Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001)). Nevertheless, even "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### II. Standard for Motion to Dismiss for Failure State a Claim

Rule 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S.___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court may also consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the

plaintiff and upon which it relied in bringing the suit" on a motion to dismiss. ATSI Comme'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). The Court may also consider matters of which judicial notice may be taken, see Federal Rule of Evidence 201(c), such as the fact that prior lawsuits or regulatory filings contained certain information, without regard to the truth of their contents. Staehr v. Hartford Fin. Servs. Group, 547 F.3d 406, 425 (2d Cir. 2008) (citations omitted); see LC Capital Partners, LP v. Frontier Ins. Group, Inc, 318 F.3d 148, 155 (2d Cir. 2003)(press coverage and prior litigation); Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings."). Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate "if the defense appears on the face of the complaint." Staehr, 547 F.3d at 425.

## DISCUSSION

### I. Federal Tort Claims Act ("FTCA") Claim

A. Administrative Exhaustion Requirements

Plaintiff's complaint alleges claims against the United States under the FTCA.[7] 28 U.S.C. §§ 2675 et seq. As a corollary to its waiver of sovereign immunity, the FTCA has express, strict administrative exhaustion requirements. The FTCA states:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while

---

[7]The United States is the only proper defendant in a FTCA action. 28 U.S.C. §§ 1346(b)(1), 2679(b)(1); Mignogna v. Sair Aviation, Inc., 937 F.2d 37, 40 (2d Cir. 1991). Thus, plaintiff's only claim under the FTCA is against the United States, not the BOP or Dr. Glover.

acting within the scope of his office or employment, unless the claimant shall
have first presented the claim to the appropriate Federal agency and his claim
shall have been finally denied by the agency in writing and sent by certified or
registered mail.

28 U.S.C. § 2675(a). The administrative exhaustion requirements in section 2675(a) are

jurisdictional and may not be waived. Celestine v. Mount Vernon Neighborhood Health Center,

403 F.3d 76, 82 (2d Cir. 2005) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)); see

Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719-20 (2d Cir. 1998) ("[T]he

United States has not consented to be sued on a tort claim unless the claim was first presented to

the appropriate federal agency in writing, was so presented within two years after the claim

accrued, and specified the amount of the claim in writing.").

There are two time requirements central to the administrative exhaustion of a FTCA

claim: (1) the filing requirement with the relevant federal agency within two years of the claim's

accrual; and, (2) the action must be commenced in Court within six months of the mailing of the

agency's final denial of the claim. 28 U.S.C. § 2401(b). These time requirements are also

jurisdictional and may not be waived. See Kontrick v. Ryan, 540 U.S. 443, 453 n. 8 (2004). The

instant motion argues that plaintiff's action must be dismissed for failure to meet the first time

requirement: plaintiff did not file his claim under the FTCA with the appropriate federal agency

within two years of the date that the claim accrued. See 28 U.S.C. § 2401(b). Section 2401(b)

states that a "tort claim against the United States **shall be forever barred** unless it is presented

in writing to the appropriate Federal agency within two years after such claim accrues."

(emphasis added).

8

Thus, to determine whether plaintiff satisfied the two-year requirement, the Court must determine when his claim accrued. When a FTCA claim accrues is a matter of federal law. Syms v. Olin Corp., 408 F.3d 95, 106 (2d Cir. 2005); Kossick v. United States, 330 F.2d 933, 935 (2d Cir. 1964). In this Circuit, a FTCA claim accrues at the time of the plaintiff's injury, Valdez v. United States, 518 F.3d 173, 177 (2d Cir. 2008) (citing Kronisch v. United States, 150 F. 3d 112, 121 (2d Cir. 1998)), and the limitations period is strictly construed. Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999). However, "in certain instances, particularly in medical malpractice cases, accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982).

B. Accrual and Exhaustion of Plaintiff's FTCA Claim

The decisions in plaintiff's District of Columbia and North Carolina actions, and previous orders in this case, have assumed that plaintiff's FTCA claim against the United States for unconstitutional psychiatric confinement accrued at the time of plaintiff's hospitalization. Indeed, there is no reason to postpone the accrual date of plaintiff's claim for purposes of the FTCA claim. Plaintiff repeatedly states in his complaint that he objected to the involuntary medication at every turn; he was clearly aware of the injury and its cause while hospitalized February to March 4, 1999. Valdez, 518 F.3d at 177; compare Williams v. U.S., No. 03 Civ. 9909, 2007 WL 951382, at *6 (S.D.N.Y. March 22, 2007) (FTCA medical malpractice claim accrual "may be postponed until plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause.") (citing Barrett, 689 F.2d at 327).

Thus, for FTCA purposes, the instant claim accrued when plaintiff was hospitalized and involuntarily medicated at Lutheran, from February 10, 1999 to March 4, 1999.

Therefore, plaintiff was required to present his claims to the BOP no later than March 4, 2001, two years after his release from Lutheran and MCC on March 4, 1999. Plaintiff's instant filing on November 12, 2003 is therefore untimely. Complaint at ¶ 92 (incorporating by reference plaintiff's FTCA claim and its denial, see Motion to Dismiss, Johnson Declaration & Exhibits 1 & 2). By letter dated April 30, 2004, the United States Department of Justice denied plaintiff's claims while at Lutheran Hospital as time-barred by 28 U.S.C. § 2401(b) of the FTCA. Id. at Exhibit 2. Moreover, plaintiff also failed to comply with the second time requirement. He did not file the instant action until April 12, 2005, way beyond the six-month period prescribed by 28 U.S.C. § 2401(b) to initiate a FTCA action in district court after denial of the claim by the agency.

C. No Tolling of FTCA Claims for Insanity or Mental Disability

The FTCA statute of limitations, section 2401(b), contains no tolling provision for insanity, and the courts have refused to toll the statute of limitations for mental disability. Casias v. United States, 532 F.2d 1339, 1342 (10th Cir. 1976) (insanity does not toll the statute of limitations under the Federal Tort Claims Act) (citing Accardi v. United States, 435 F.2d 1239 (3d Cir. 1970); Hollman v. Dep't of Health and Human Services, 501 F. Supp. 255, 258 (S.D.N.Y. 1980) (holding that the Social Security Act's statute of limitations period not tolled by mental incompetency and noting that the FTCA is not tolled for mental incompetence) (citing Casias, 532 F.2d at 1342).

Therefore, plaintiff's FTCA claims are time-barred and this Court lacks subject matter

jurisdiction over them.  Defendants' motion to dismiss should be granted and plaintiff's FTCA

claims should be dismissed.

## II. Bivens,[8] Section 1983 and Section 1985 Claims

A. Statute of Limitations

Unlike the FTCA, the timeliness of plaintiff's claims under Bivens[9] and Sections 1983

and 1985 of the Civil Rights Act is not jurisdictional.  If these claims are time-barred, as

defendants argue, they should be dismissed for failure to state a claim, not for lack of

jurisdiction.  See Frontera v. United States, No. 05-CV-426S, 2009 WL 909700, at *6 n.5,

(W.D.N.Y. Mar. 31, 2009) (drawing distinction between jurisdictional nature of claim accrual

under FTCA and claim accrual under Bivens).

The statute of limitations for Bivens, 42 U.S.C. § 1983 and § 1985 actions arising in New

York is three years.  Owens v. Okure, 488 U.S. 235, 251 (1989) (holding that New York's three-

year statue of limitations for general personal injury actions is applicable to § 1983 actions filed

---

[8]Bivens claims allege violations by persons acting under color of federal law and are
analogous to claims under 42 U.S.C. § 1983.  See Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995)
("federal courts have typically incorporated § 1983 law into Bivens actions"); Chin v. Bowen, 833
F.2d 21, 23-24 (2d Cir. 1987) (A Bivens action resembles actions under § 1983, the principal
difference being that a Bivens action remedies a constitutional violation by a federal-rather than a
state-agent).

[9]A Bivens claim can only be brought against a federal employee in his individual capacity.
All claims against defendants United States and the Federal Bureau of Prisons and any individual
defendants in their official capacities have already been dismissed from this action for failure to
state a claim upon which relief may be granted.  [See Orders dated July 27, 2005 and June 11,
2008].  Thus, plaintiff's only remaining Bivens claim is against Dr. Glover who was a psychiatrist
at MCC at the time of the events underlying the complaint. Complaint at ¶¶ 6, 30, 37, 61.

in federal courts in New York); Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999); Chin v. Bowen, 833 F.2d at 23-24 (state statute of limitations for § 1983 and Bivens claims are the same); Meyer v. Frank, 550 F.2d 726, 728 n. 5 (2d Cir. 1977) (applying New York's three-year statute of limitations to § 1985 action); Peterson v. Tomaselli, 02 Civ. 6325, 2004 WL 2211651, at *14 (S.D.N.Y. Sep. 30, 2004) (applying New York's three-year statute of limitations to §§ 1983 and 1985 actions). Federal courts in New York apply New York's tolling rules to § 1983 and Bivens claims. Wallace v. Kato, 549 U.S. 384, 395 (2007); Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980) (citing Board of Regents v. Tomanio, 446 U.S. 478 (1980)) (noting that state tolling rules, like state limitations periods, govern federal actions brought under § 1983). However, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Wallace, 549 U.S. at 387.

Defendants assume that plaintiff's cause of action accrued in February 1999, when he was treated at Lutheran, and maintain that this action, filed over six years later on April 12, 2005, is therefore time-barred. Plaintiff posits that although he did not file this action until six years after the incident, he is entitled to tolling of the relevant limitations periods. Plaintiff makes three arguments for tolling: (1) tolling under New York's Civil Practice Law and Rules ("CPLR") §205(a); (2) tolling under New York's CPLR § 208; and, (3) equitable tolling on the basis of mental incompetence. See Plaintiff's Opposition to Motion to Dismiss at 1-5; Letter from plaintiff dated May 22, 2009.

Neither party has addressed the important issue of claim accrual for plaintiff's claims. Moreover, the parties do not address the different standards for competency to stand trial as

distinguished from competency to file a civil action. These issues are crucial to the Court's adjudication of the instant motion.

B.   Accrual Date

The "Singleton Rule" states that the accrual date in § 1983 actions is when the plaintiff "knows or has reason to know of the injury which is the basis of the action." Singleton, 632 F.2d at 191. While the Singleton Rule is the general rule, in Ormiston v. Nelson, 117 F.3d. 69 (2d Cir. 1997), the Second Circuit considered the question of "whether the accrual date for a cause of action under 42 U.S.C. § 1983 [ ] claiming unconstitutional medical or psychiatric confinement is, like the accrual date for other unconstitutional confinements, the date of initial confinement, or whether medical and psychiatric confinements require application of a different rule." The Court held that:

> [S]ection 1983 claims based upon medical or psychiatric confinement, like other section 1983 claims, accrue when the plaintiff "knows or has reason to know of the injury which is the basis of his action." Singleton [632 F.2d at 191]. Because individuals subject to involuntary medical or psychiatric confinement may not be able to comprehend the nature of the initial or subsequent confinement, however, we hold that, in such cases, the " Singleton rule" does not necessarily mandate that the initial date of confinement serve as the accrual date. Rather, when a section 1983 action is brought for involuntary medical or psychiatric confinement, the accrual date will depend upon the particular circumstances of each such confinement.

Ormiston, 117 F.3d. at 70; see also Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001).

In Ormiston, the plaintiff was involuntarily hospitalized on August 12, 1992 as a danger to himself and others. He was released about six weeks later on September 25, 1992 and filed his 42 U.S.C. § 1983 action on August 30, 1995, a few weeks after the three-year anniversary of his involuntary hospitalization. The Second Circuit reversed the district court's dismissal of the

action as time-barred, and in so doing, refined the determination of the accrual date in cases of medical and psychiatric confinement. The Second Circuit rejected the conclusion that "in all cases of medical or psychiatric confinement, the date of release automatically represents the date of accrual." Id. at 71-72. Instead, it found that in such cases, "we cannot assume that a plaintiff is in complete control of his physical or mental faculties - or is even aware of his confinement-during the course of his hospitalization, much less that he is able to assert his rights during this period. Id. at 72. Thus, it held, "in order to survive a motion to dismiss for failure to state a claim, a section 1983 plaintiff asserting deprivation of liberty, whose claim would be time-barred if it accrued at the time of confinement, must plead facts indicating that he was not able to comprehend the nature of his circumstances when he was taken into custody. Where plaintiff so pleads, the allegations of the complaint must of course be taken as true, and ordinarily the motion to dismiss will be denied." Id. (internal citations omitted).

As with plaintiff's FTCA claims, this Court has previously assumed that plaintiff's Bivens and civil rights claims accrued at the time of his treatment at Lutheran. But under Ormiston, where a plaintiff pleads "facts that indicate that he was unable to comprehend the nature of his circumstances," the analysis of the accrual date depends on the particular circumstances of the confinement. Plaintiff alleges that he was mentally ill and incompetent from the time he arrived at Lutheran until he was declared competent to stand trial by the Texas District Court on April 16, 2002. Plaintiff's Opposition at ¶ 2.[10] Although plaintiff does not

---

[10]This allegation may ultimately undermine the merits of plaintiff's claim.

clearly articulate his position on the accrual of his claims,[11] given the Court's obligation to liberally construe plaintiff's allegations on this motion to dismiss, the Court shall consider April 16, 2002 as the accrual date for plaintiff's <u>Bivens</u> and civil rights claims.[12] Therefore, plaintiff's civil rights and <u>Bivens</u> claims were filed within three years of their accrual and are timely.

    C.    Equitable Tolling

    Even if plaintiff's claims accrued before April 16, 2002, on the instant record, plaintiff would be entitled to equitable tolling. The Second Circuit has recognized that the "seemingly clear-cut bifurcation between accrual, governed by federal law, and tolling rules, governed by state law, obscures two matters" because, *inter alia*, the "circumstances governing accrual are similar, if not identical, to circumstances pertinent to a state tolling rule." <u>Pearl v. The City of Long Beach</u>, 296 F.3d 76, 80 (2d Cir. 2002).

---

[11]Defendants do not address when plaintiff's claims accrued; they only address equitable tolling. Therefore, defendants do not persuasively counter plaintiff's claim that his claim accrued on April 16, 2002, the date he was found competent to stand trial by the Texas District Court. In their argument regarding equitable tolling, defendants maintain the critical date is the date on which plaintiff was hospitalized or, at the latest, the date that the *doctors* determined him competent, which occurred either in January or March 2002, which would make this action filed April 12, 2005, either three months or one month untimely. Given the information on plaintiff's mental condition in the present record, the Court cannot determine plaintiff's mental fitness in January, March and April of 2002. Instead, the Court is obliged to draw all reasonable inferences in plaintiff's favor. Thus, for the purpose of this motion to dismiss, the Court shall assume the claims underlying this action accrued on April 16, 2002.

[12]Plaintiff argues that his claim against the Lutheran defendants, BOP and Dr. Glover did not accrue until he learned of their involvement in his psychiatric confinement in October 2004 when he received Lutheran records in response to interrogatories in his D.C. action. Plaintiff's Opposition to Motion to Dismiss at 4. While he may not have learned the names of some of the parties until that date, plaintiff was aware of the deprivation of his liberty at Lutheran Hospital before that date. It is the date on which plaintiff knew or should have known of the deprivation of his constitutional rights that his claim accrued.

"Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace, 549 U.S. at 396. In the Second Circuit, "a statute of limitations may be tolled as necessary to avoid inequitable circumstances," such as "where a party has been prevented in some extraordinary way from exercising his rights." Iavorski v. INS, 232 F.3d 124, 129 (2d Cir. 2000)(citations and internal quotation marks omitted); see also, Veltri v. Building Serv. 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." (emphasis added)).

For equitable tolling to apply, the court must determine that the plaintiff: "(1) has acted with reasonable diligence during the time period [he] seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003)(citation and internal quotation marks omitted). Equitable tolling applies when a plaintiff: (1) actively pursues legal remedies but files a defective pleading within the limitations period; (2) was unaware of the existence of a cause of action due to a defendant's misconduct, or (3) suffered from a medical or mental impairment that prevented the timely pursuit of legal claims. Id.

"The issue of whether a mental disability warrants equitable tolling of a filing deadline requires a 'highly case-specific' inquiry," Brown v. Parkchester S. Condos., 287 F.3d 58, 60 (2d Cir. 2002)(quoting Boos v. Runyon, 201 F.3d 178, 184 (2d Cir. 2000)). In Boos, the Second Circuit denied equitable tolling where the plaintiff claimed she suffered from "paranoia, panic

16

attacks, and depression," finding such "conclusory and vague claim[s]" to be insufficient justification for tolling. 201 F.3d at 185. The court required "a particularized description of how [the plaintiff's] condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights" to toll the statute of limitations. Id.

Plaintiff has not satisfied his obligation to provide a particularized description of how his mental impairment adversely affected his capacity generally or his ability to pursue his legal rights. However, he alleges that from the time of his arrest until his criminal trial, he suffered a series of assaults and involuntary medications at hospitals in New York and North Carolina, *inter alia,* where he was held by the BOP between 1999 and 2002. Plaintiff alleges that when he finally emerged from his incompetence, in the Spring of 2002, and after he was tried in Texas, he began litigating claims arising from his involuntary hospitalizations and medication. He began filing these claims in the Fall of 2003. Whereas plaintiff does not qualify for statutory tolling under New York law, he argues that both his incompetence and his filing of the actions in what turned out to be the wrong courts should equitably toll the statute of limitations.

The Court agrees. While plaintiff's arguments do not satisfy New York's statutory provisions for tolling,[13] construed in the light most favorable to plaintiff, this is the extraordinary

---

[13]Plaintiff is not entitled to tolling under the two state tolling provisions he cites: the "Savings Statute," CPLR § 205(a) and CPLR § 208. As to his claims against the Lutheran defendants, the District of Columbia's dismissal for lack of personal jurisdiction, see Harrison v. Lappin, 2005 WL 752189, at *3-4, n.4, precludes the application of CPLR § 205(a)'s six-month benefit. Winston v. Freshwater Wetlands Appeals Bd. 224 A.D.2d 160, 646 N.Y.S.2d 565 (2d Dep't 1996) (a dismissal for lack of personal jurisdiction precludes the application of the six-month benefit); Recycle v. Lacatena, 163 A.D.2d 693, 558 N.Y.S.2d 299 (3d Dep't 1990) (same). The claim against Dr. Glover would not be saved because defendant Glover was not a party to the D.C. action and thus had not been given timely notice of the claim previously brought by plaintiff.

case to which equitable tolling may apply, especially at the motion to dismiss stage. Plaintiff

was at Lutheran in Brooklyn from February 10, 1999 to March 4, 1999. Thereafter, he was at

Butner in North Carolina (where he was briefly declared competent). Plaintiff alleges that he

was involuntarily medicated from March 2000 to May 21, 2001, before he was declared

competent in April 2002. This action was filed on April 12, 2005. I therefore recommend that

defendants' motions to dismiss plaintiff's Bivens and 42 U.S.C. § 1983 claims as time barred

should be denied. At this juncture and on the instant record, construing the motion in the light

most favorable to plaintiff, defendants' motions to dismiss plaintiff's claims as time-barred

should be dismissed.

---

Baker v. Latham Sparrowbush Assocs., 808 F. Supp. 981, 991 (S.D.N.Y. 1992) ("The prior action need not be the same cause of action in order to invoke the tolling principle of § 205(a) as long as it is based on the same transaction or occurrence, such that 'the defending party was fairly notified of the subject of the dispute within the limitations period.'") (quoting Harris v. United States Liability Ins. Co., 746 F.2d 152, 154 (2d Cir. 1984)); Miller v. Waldbaum's Inc., 7 Misc.3d 1003(A), 801 N.Y.S.2d 236 (N.Y.Sup. Feb. 17, 2005) ("The function of a C.P.L.R. § 205(a) extension is to ameliorate the potentially harsh effect of the statute of limitations in cases in which the defendant has been given timely notice of a claim previously brought by a party, but not fully litigated for reasons not enumerated and excluded in the statute). Dr. Glover had no notice of plaintiff's claim against him until he was served with the instant action on July 28, 2008. See Docket entry 36. Therefore, plaintiff is not entitled to tolling under CPLR § 205(a).
    Plaintiff would not be entitled to tolling under CPLR § 208 because plaintiff has not satisfied his burden that he was "insane" within the meaning of CPLR § 208. Psychiatric hospitalization does not per se establish a basis for § 208 tolling, Joseph S. v. Hogan, No. 06-CV-1042, 2008 WL 2778876, at *29 (E.D.N.Y., April 21, 2008), Vallen v. Carrol, No. 02 Civ. 5666, 2005 WL 2296620, at *3-5 (S.D.N.Y. Sept. 20, 2005) (rejecting automatic insanity toll based on plaintiff's institutionalization), and plaintiff has not demonstrated continual insanity during the period he seeks to toll.

18

### III. Claims under 42 U.S.C. §§ 1985 and 1986

Plaintiff also brings claims under 42 U.S.C. §§1985 and 1986. Plaintiff's conspiracy claim under § 1985 should be dismissed because plaintiff fails to allege facts which would support a claim of conspiracy. Moreover, plaintiff fails to allege that the conspiracy was based on discriminatory animus. In order to make out a violation of § 1985(3), a plaintiff "must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983). With respect to the second element, a plaintiff must show that the conspiracy was motivated by, "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Id. (internal quotations omitted); see also Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419 (2d Cir. 1999). Plaintiff fails to allege any facts to support his conspiracy claim and therefore it fails. See Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (holding that broad allegations of conspiracy are insufficient; the plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.").

Further, as plaintiff fails to state a § 1985 claim, his claim under § 1986 must be dismissed because a section 1986 claim must be predicated upon a valid § 1985 claim. Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) ("a § 1986 claim is contingent on a valid § 1985

claim") (citing Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d
Cir.1993)). I therefore recommend that defendants' motion to dismiss plaintiff's §§ 1985 and
1986 claims should be granted.

## IV. Personal Involvement of Defendant Glover

Defendant Glover moves to dismiss the Bivens action against him on the grounds that he
was not personally involved in the alleged deprivation of plaintiff's constitutional rights and on
the basis of qualified immunity. To survive a motion to dismiss, a complaint must "state a clam
to relief that is plausible on its face." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. at 1949
(2009)(internal quotation marks omitted). "Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice." Id.; see also Webb v. Goord,
340 F.3d at 110. "Furthermore, a plaintiff in a Bivens action is required to allege facts indicating
that the defendants were personally involved in the claimed constitutional violation." Arar v.
Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (citing Ellis v. Blum, 643 F.2d 68, 85 (2d Cir.1981)
and Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir.2006)).

For substantially the same reasons stated above regarding plaintiff's failure to state a
conspiracy claim, plaintiff's complaint fails to state a claim against Dr. Glover, and defendants'
motion should be granted. During the period relevant to this complaint, Dr. Glover was "a
medical doctor, possibly a psychiatrist" employed by the Bureau of Prisons and worked at MCC.
Complaint at 6. Plaintiff was only at MCC on February 10, 1999- for less than a day. Dr.
Glover was never employed nor appeared at Lutheran, the hospital to which plaintiff was
transferred on February 10, 1999 and at which plaintiff remained for the balance of his time in

this jurisdiction. Although plaintiff mentions defendant Glover approximately six times in his complaint, he does so solely in the context of presumed complicity or approval of actions of individuals at Lutheran, see e.g. Complaint at ¶ 30 ("with the complicity and approval of Defendant Glover of MCC"), 37 ("with the complicit approval of defendant[] Glover"), 54 ("further conspired with"), 61 ("again spoke with Defendant Glover At MCC, agreed that [Lutheran doctor would continue involuntary medication]), 63 ("pursuant to the agreed upon conspiracy [between Lutheran doctors and Glover]", 75 (Dr. Glover [and other defendants] conspire to and did commit the New York state law torts of . . . ."); never alleging Glover's personal involvement in the alleged constitutional violations or any factual basis supporting a meeting of the minds. Plaintiff's conclusory allegation that there was an agreement or conspiracy without any factual basis is insufficient to survive the motion to dismiss for lack of personal involvement. Webb v. Goord, 340 F.3d at 110-11. Plaintiff's Bivens claim against defendant Glover should be dismissed because plaintiff fails to allege facts supporting Glover's personal involvement in the claimed constitutional violation. Arar, 585 F.3d at 569. As the Court finds that plaintiff fails to sufficiently allege defendant Glover's personal involvement, it need not reach the question of whether he may be entitled to qualified immunity.

## V. State Law Claims

To the extent that plaintiff seeks to raise a medical malpractice claim under this Court's diversity jurisdiction, 28 U.S.C. § 1332, the claim should be dismissed. A federal court sitting in diversity jurisdiction will apply the law of the forum state on outcome determinative issues, see Bank of New York v. Amoco Oil Co., 35 F.3d 643, 650 (2d Cir. 1994) (citing Erie R.R. Co. V.

Tompkins, 304 U.S. 64, 80 (1938)), including state statutes of limitations governing the timeliness of state law claims. See Personis v. Oiler, 889 F.2d 424, 426 (2d Cir. 1989) (citing Guaranty Trust Co. v. York, 326 U.S. 99 (1945)). Under New York Law, the statute of limitations for medical malpractice is two and one-half years from the date of the alleged malpractice. N.Y. C.P.L.R. § 214-a. The accrual of a cause of action for medical malpractice (not based upon the discovery of a foreign object in the body of the patient) under New York law is measured from the date of the occurrence of the act, omission or failure complained of, as opposed to the date of the discovery of the injury. Candelaria v. Erickson, No. 01 Civ. 8594, 2005 WL 1529566, at *9 (S.D.N.Y. June 28, 2005) (citing Helgans v. Plurad, 255 A.D.2d 554, 555 (2d Dept. 1998)). The date of accrual of plaintiff's state law medical malpractice claims for statute of limitations purposes, therefore, is March 4, 1999--the last date on which plaintiff was treated at Lutheran. Since the complaint was filed over six years after the claim accrued, plaintiff's state law claim is time-barred. For the reasons stated supra, New York statutory tolling is not available to plaintiff. Even if equitable tolling applied to toll the period of time between the accrual date until plaintiff was declared competent -- April 12, 2002-- this claim would still be time-barred because it was filed beyond the two and one-half year period. Therefore, I recommend that plaintiff's state law medical malpractice claim should be dismissed.

Similarly, to the extent plaintiff seeks to raise state law claims for assault, battery, and false imprisonment, they all have a one year statute of limitations and would be time-barred. N.Y. C.P.L.R. § 215. Therefore, I recommend that plaintiff's state law claims for assault, battery and false imprisonment should be dismissed.

# CONCLUSION

For the reasons stated herein, it is respectfully recommended that defendants' motions to dismiss should be granted in part, and denied in part. The federal defendants' motion to dismiss plaintiff's FTCA claim should be GRANTED. Defendants' motion to dismiss plaintiff's § 1985, 1986 and state law claims should be GRANTED. Defendants' motions to dismiss plaintiff's § 1983 and Bivens action as time-barred should be DENIED. Defendants' motion to dismiss plaintiff's Bivens claim against defendant Glover should be GRANTED. Plaintiff's 42 U.S.C. § 1983 claims against the Lutheran defendants should proceed.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/Signed by Judge Lois Bloom/
_____
LOIS BLOOM
United States Magistrate Judge

Dated: March 23, 2010
      Brooklyn, New York